IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS WOMACK, | ) | CASE NO. 1:10CV2678 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Thomas Womack ("Womack") seeks judicial review of the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying his application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42

U.S.C. §1381 *et seq.*  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c).  This matter has been referred to the undersigned Magistrate Judge for a

Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons set forth below, the final decision of the Commissioner should be

AFFIRMED.

## I.  Procedural History

On September 20, 2006, Womack applied for SSI, alleging a disability onset date of June

2, 2000.  Tr. 63-65.  Womack claimed that a combination of impairments, including arm and

back pain, prevented him from working.  Tr. 75, 93, 96.  The state agency denied Womack's

claim initially on January 16, 2007 (Tr. 47), and upon reconsideration on April 21, 2007.  Tr. 48.

On July 2, 2007, Womack filed a written request for a hearing (Tr. 57), and on March 16, 2009, a

hearing was held before Administrative Law Judge Alma S. Deleon (the "ALJ").  Tr. 24-46.  In a

decision dated May 15, 2009, the ALJ determined that Womack was not disabled or entitled to

1

SSI benefits.  Tr. 16-23.  Womack requested review of this decision by the Appeals Council.  Tr. 11.  On September 3, 2009, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

On November 24, 2010, Womack filed this action seeking review of the Commissioner's decision.  Doc. 1.  On July 22, 2011, Womack filed his Brief on the Merits.  Doc. 14.  On October 5, 2011, the Commissioner filed his Brief on the Merits.  Doc. 16.

## II.  Evidence

### A.    Personal and Vocational Evidence

Womack was born on July 13, 1964, and was forty-four years old at the time of the hearing.  Tr. 20, 28.  He completed ninth grade and is able to communicate in English.  Tr. 28.  Womack had worked on a full-time basis as a roofer/welder from 1987 through 2002.  Tr. 76.  Womack was imprisoned in 2006 for, *inter alia*, drug possession and "passing bad checks."  Tr. 111, 181, 209, 298.  Womack applied for disability benefits soon after his release from prison in August 2006.  Tr. 63–65, 181.  At the time of the administrative hearing, Womack was divorced and living with his niece.  Tr. 28.

### B.    Medical Evidence

#### 1.    Treating Physicians

**Dr. Allen.**  Mark Allen, M.D., treated Womack in 2005 for complaints of pain in his lower back and lower extremities.  In a treatment note dated April 7, 2005, Dr. Allen described Womack as a "well-developed, well-nourished gentleman in no acute distress at the time of the examination."  Tr. 154.  Dr. Allen noted that Womack's chief complaint was pain in his lower back and lower extremity pain.  Tr. 154.  He also noted that Womack injured his back sometime in the past and finally underwent surgery in June 2004, and then had a second surgery in July

2

2004.  His examination revealed decreased range of motion in the cervical spine and tenderness

over the paracervical and subscapular region.  Tr. 154.  In a treatment note dated April 20, 2005,

Dr. Allen noted that Womack was doing "all right" according to a family member.  Tr. 167.

In a letter dated April 13, 2005, to Court Community Services, Dr. Allen stated that

Womack suffered from intractable pain from two previous back surgeries, and that he had severe

low back pain, and right lower extremity pain.  Tr. 110.  Dr. Allen opined that "[h]eavy lifting,

walking and standing for long periods of time exacerbate his symptoms, and cause decrease in

functionality."  Tr. 110.  He also opined that Womack was "unable to lift more than 10 pounds,

or doing [sic] any repetitive tasks, such as lifting repetitively, crawling, climbing, stretching,

stooping repeatedly."  Tr. 110.

In a treatment note dated July 28, 2005, Dr. Allen found that Womack was neurologically

intact and had a good range of motion in his cervical spine.  Tr. 143.  He also noted Womack had

tenderness over his lumbosacral spine and left and right SI joints, which was aggravated by

flexion, extension, and straight-leg raises.  Tr. 143.  Dr. Womack's diagnosed lumbar radiculitis,

post-laminectomy syndrome, and peripheral neuropathy.  Tr. 143.

**Dr. Looby.**  In September 2006, Womack was examined as a new patient by Robert

Looby, M.D., in connection with his application for public assistance.  Tr. 111–12, 176.  In a

treatment note dated September 13, 2006, Dr. Looby reported that Womack stated that he was

"trying to get on disability," despite the denial of a prior disability application.  Tr. 111.  Dr.

Looby described Womack as "very well muscled."  Tr. 111.  On examination, Dr. Looby noted

that Womack had tenderness in his lower lumbar area and that his lower back was very limited in

mobility especially in left and right lateral bending, and posterior extension.  Tr. 111.  Dr. Looby

also noted that there appeared to be some deformity in the right AC joint and that Womack had

3

very limited motion in the right shoulder and marked limitation of extension in the left elbow.

Tr. 112.  Dr. Looby diagnosed low back pain and post traumatic arthropathy of the left elbow.

Tr. 112.  Dr. Looby further noted that Womack does not sleep well due to pain, but he did not

prescribe any medication.  Tr. 111-12.

  In September 2006, Dr. Looby completed a form captioned "Basic Medical Form" for the

Ohio Department of Jobs and Family services.  Tr. 197-98.  Dr. Looby reported that Womack

had obvious discomfort with arising from a chair and walking, limited range of motion in the

lumbar spine and neck, marked deformity of the elbow, and palpable abnormality of the AC joint

with limited abduction.  Tr. 197.  Dr. Looby opined that standing/walking was limited to two to

three hours in an eight hour day but for only twenty-five minutes without interruption.  Tr. 198.

Dr. Looby also found that sitting is limited to three to four hours in an eight hour day but for

only thirty minutes without interruption.  Tr. 198.  Dr. Looby concluded that Womack could lift

and carry six to ten pounds frequently and eleven to twenty pounds occasionally.  Tr. 198.  Dr.

Looby further found that bending, reaching, repetitive foot movements and push/pulling are

markedly limited, and that handling was moderately limited.  Tr. 198.  Dr. Looby also opined

that Plaintiff was unemployable for 12 months or more.  Tr. 198.

  Womack returned to Dr. Looby's office on February 13, 2007.  Tr. 196.  Womack

reported to Dr. Looby that he had "fallen afoul of the law in that he is not making child support

payments and is due to appear in court soon."  Tr. 196.  Dr. Looby noted that "[Womack] was

hoping that [Dr. Looby] could give him some sort of a note stating that he is still unable to

work."   Tr. 196.  Dr. Looby also noted that Womack stated the he "has not made any attempts

to secure any non-strenuous employment but chooses instead to wait and see if he obtains public

assistance."  Tr. 196.  After diagnosing Womack with chronic back pain, Dr. Looby gave him "a

brief note on a prescription pad blank stating that he was still under medical evaluation and couldn't work at this time."  Tr. 196.  Dr. Looby added that he was "not sure how long that is going to fly if he is turned down again by disability."  Tr. 196.

**Dr. Pecar.**  Janez Pecar, M.D., treated Womack for back pain one to two times a year since 1994.  Tr. 343.  Dr. Pecar's progress notes indicate that Womack missed several appointments in 2007 and 2008.  Tr. 259–60.  On February 19, 2009, Dr. Pecar completed a Multiple Impairment Questionnaire.  Tr. 343-350.  Although he found that Womack's prognosis was "good," Dr. Pecar opined that Womack could only lift up to ten pounds and was unable to sit for more than two hours in an eight-hour day and was unable to stand/walk for more than one hour in an eight-hour day.  Tr. 345.  Furthermore, Dr. Pecar opined that Womack was incapable of handling even low stress work and that he would likely be absent from a job more than three times per month.  Tr. 348-49.

In a letter dated February 2, 2009, Dr. Pecar confirmed that Womack had been a patient of his and, in his best medical opinion, was totally disabled without consideration of any past or present drug and or/alcohol use.  Dr. Pecar further stated that drug and/or alcohol use was not a material cause of Womack's disability.  Tr. 352.

## 2.    Consultative Physician

**Dr. Scheatzle**.  On December 18, 2006, state agency consultative physician Paul T. Scheatzle, D.O., examined Womack.  Tr. 181–87.  Dr. Scheatzle noted that Womack had a history of multiple surgeries, including three surgeries on his left arm, one surgery on his left wrist, one surgery on his right wrist, and two surgeries on his lower back.  Tr. 181.  Womack described his symptoms to Dr. Scheatzle as pain in his shoulders, left elbow, and right knee.  Tr. 181.  Womack also informed Dr. Scheatzle that his pain was constant in nature but intermittent

in severity, and that his pain kept him awake at night.  Tr. 181.  Womack reported that he took aspirin for the pain.  Tr. 181.  On examination, Dr. Scheatzle found that Womack was neurologically intact, had "[n]ormal muscle tone," and walked with a "non-antalgic" gait.  Tr. 181.  Dr. Scheatzle found that Womack had decreased range of motion of the left elbow and slight decreased range of motion of his shoulders.  Tr. 182.

Dr. Scheatzle opined that Womack's condition did not limit his ability to stand, sit, or walk.  Tr. 183.  Dr. Scheatzle also concluded that Womack was capable of "[l]ifting up to 50 pounds occasionally or 20 pounds more frequently for a medium physical demand level."  Tr. 183.  He also opined that Womack's ability to handle objects was slightly decreased with his left hand due to pronation, supination and elbow extension in the left upper extremity.  Tr. 183.  Dr. Scheatzle further found that Womack could carry objects up to 40 pounds.  Tr. 183.  Finally, he concluded that Womack's hearing, speaking, traveling, understanding, memory, concentration, persistence, social interaction, and adaptation are within social limits.  Tr. 183.

### 3.  Reviewing Physician

**Dr. Cho.**  On January 16, 2007, a state agency reviewing physician Myung Cho, M.D., completed a Physical Residual Functional Capacity Assessment for Womack.  Tr. 188–95.  Dr. Cho determined that Womack's allegations were "not fully supported by objective findings" and, as such, were only "partially credible."  Tr. 193.  Dr. Cho opined that Womack was capable of lifting, carrying, pushing, or pulling up to fifty pounds occasionally; lifting, carrying, pushing, or pulling up to twenty five pounds frequently; and sitting, standing, or walking for about six hours in an eight-hour workday.  Tr. 189.  Dr. Cho found that Womack could never be on ladder, ropes or scaffolds due to limited range of motion in the left elbow and both shoulders.  Tr. 190.  Dr. Cho also found that Womack could frequently reach in all directions bilaterally.  Tr. 191.

**C.      Testimonial Evidence**

**1.      Womack's Testimony**

On March 16, 2009, Womack appeared with counsel and testified at the administrative

hearing.  Tr. 24–46.  Womack testified that he was unable to work primarily because of arm and

back pain.  Tr. 28–29.  He stated that he cannot stand for long, cannot walk distances, cannot lift,

and cannot bend over to pick something up.  Tr. 29.  He also stated that he has neuropathy in his

feet.  Tr. 29.  Womack testified that he would need to take frequent breaks when doing any type

of activity, such as washing dishes.  Tr. 30.

Womack testified that he last worked in 2005 as a roofer.  Tr. 30.  He stated that he was

essentially fired from that job because he could not do the work anymore.  Tr. 32.  He stated that

he has tried to work again but that he cannot do anything else because his back and feet hurt and

he just cannot do the work.  Tr. 30-31.  Womack noted that he also worked as a welder, but that

he could not do the job anymore because it required him to bend over constantly.  Tr. 32.  He

testified that his daily activities included doing some household chores, going grocery shopping

twice a week, visiting friends, watching television, and listening to the radio.  Tr. 33–34.

Womack testified that he has problems sleeping and that he only sleeps about three or

four hours a night.  Tr. 35, 41.  He stated that he takes an hour nap every day.  Tr. 35.  He stated

that he could stand or sit for about five minutes before he started to hurt.  Tr. 35.  He also

testified that he could not lift with his left arm because of his prior surgeries.  Tr. 36.  Womack

further testified that he has a constant sharp, shooting pain in his back.  Tr. 37.  He reported that

his pain gets worse if he climbs steps or over-exerts himself.  Tr. 37.  He stated that nothing

relieved the pain – not even medication.  Tr. 38.  Womack stated that he never had physical

therapy on his back.  Tr. 38.

### 2.      Vocational Expert's Testimony

Frances Kinley, a vocational expert ("VE"), also testified at the hearing.  Tr. 42-45.  The VE noted that Womack had worked as a roofer/helper/laborer, which fell under a construction worker 2, which entails a very heavy exertional level and is unskilled in nature.  Tr. 43.

In a hypothetical, the ALJ asked the VE whether a person could perform any job in the national economy if the individual had the same vocational factors as Womack and the following limitations:  could lift and carry no more than 20 pounds; push and pull limited in his upper and lower extremities; limited reach overhead; no exposure to extreme cold; could bend, crouch, climb, balance, and walk occasionally; limited use of left arm for a right-handed individual.  Tr. 43-44.  The VE opined that there would be some light jobs that such an individual could perform including information clerk (light exertional level and unskilled) (approximately 70,000 jobs); office helper (light exertional level and unskilled) (approximately 150,000 jobs); and school bus monitor (light exertional level and unskilled) (approximately 20,000 jobs).  Tr. 44.

Womack's counsel was then given an opportunity to question the VE.  Tr. 45.  Counsel asked the VE if the hypothetical person would be precluded from working at the jobs the VE listed if the person was limited to sitting for two hours and standing and walking for one hour in an eight-hour day.  Tr. 45.  The VE responded that such limitations would preclude the listed examples.  Tr. 45.  Counsel then asked the VE to consider the additional limitation that the person would need to take unscheduled breaks at unpredictable intervals, averaging one break every one to two hours.  Tr. 45.  The VE responded that this limitation would preclude all work.  Tr. 45.  Finally, counsel asked the VE to consider the limitation that the person would likely be absent from work more than three times a month.  Tr. 45.  The VE concluded that this would not fall within a tolerable level of absenteeism.  Tr. 45.

### III.  Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of

performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

In her May 2009 decision, the ALJ found that Womack had not engaged in substantial gainful activity since September 6, 2006, the application date. Tr. 18. The ALJ determined that Womack had the following severe impairments: chronic low back pain disorder status post lumbar decompression. Tr. 18. The ALJ found that Womack did not have an impairment or combination of impairments that met or medically equaled an impairment described in the Listing of Impairments (20 C.F.R. pt. 404, Subpt. P , App. 1). Tr. 18. The ALJ next determined that Womack retained the RFC to "perform light work, but that he is limited to occasional pushing and pulling with the lower and upper extremities. He is unable to reach overhead and cannot be exposed to extreme cold. In addition, he can stoop, crouch, climb, and balance and walk occasionally. He has limited use of his left non-dominant hand." Tr. 18. The ALJ then determined that Womack could not perform any past relevant work. Tr. 22. Finally, considering Womack's vocational factions, RFC, and the testimony of the VE, the ALJ found that Womack was capable of performing other work that existed in significant numbers in the national economy. Tr. 22. Thus, the ALJ concluded that Womack was not disabled. Tr. 28.

## V.  Arguments of the Parties

Womack challenges the Commissioner's decision on two grounds.  First, Womack asserts that the ALJ's decision is not supported by substantial evidence because she did not find several of Womack's impairments to be severe and because she did not consider pertinent medical evidence when formulating Womack's RFC.  Doc. 14, pp. 10-13.  Second, Womack argues that the ALJ erred by failing to evaluate his pain and credibility in accordance with the requirements of Social Security Rule ("SSR") 96-7p.  Doc. 14, pp. 13-16.

In response, the Commissioner argues that the ALJ undertook a comprehensive evaluation of the overall evidentiary record, including medical source opinions and Womack's subjective complaints, and reasonably determined that Womack was not disabled.  Doc. 16, pp. 7-11.  In addition, the Commissioner asserts that the ALJ properly assessed Womack's complaints of debilitating pain.  Doc. 16, pp. 11-12.

## VI.  Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as

11

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## A. Substantial Evidence Supports the ALJ's Decision

### 1. The ALJ's Determination at Step Two was Proper

Womack asserts that, under step two of the sequential analysis, the ALJ should have found several of his alleged conditions to be severe impairments in addition to his chronic low back pain disorder. Doc. 14, pp. 10–11. Under step two, Womack bears the burden of establishing that these conditions were severe impairments. *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986) ("Plaintiff must prove that the impairment is severe and that it significantly limits his ability to perform basic work activities."). In support of his position, however, Womack only argues that, because he was diagnosed with certain impairments, such impairments should have been found to be severe. This argument is without merit because a mere diagnosis of physical impairment does not equate with disability for the purposes of SSI benefits. *See, e.g., Foster v. Bowen*, 853 F.2d 483, 488 (6th Cir.1988).

In *Foster,* the treating physician diagnosed the plaintiff as having dysthymic disorder, but never described the plaintiff as disabled. Instead, he described the plaintiff as "well-oriented for time, place, and person," and as having "good judgment and insight into her problems." *Id.* The physician's findings indicated that, although plaintiff may have suffered from a depressive disorder, her condition did not qualify as disabling. *Id.* The facts of *Foster* are similar to the instant case. The record indicates that Womack had several physical problems in addition to his chronic back pain disorder that were diagnosed by his physicians, but it does not indicate that

12

these problems were disabling.  For example, Womack had limitations in his left arm from a past injury, but there is no evidence that this impairment imposes significant limitations on his ability to perform basic work activities.  Thus, even though the record contains diagnoses of physical problems, those diagnoses alone do not equate to disability.

Furthermore, under the law of the Sixth Circuit, as stated in *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 245 (6th Cir.1987), the failure to recognize an impairment at step two does not constitute reversible error if the ALJ properly identifies all work-related limitations in the RFC finding.  Here, the ALJ evaluated and accounted for all of Womack's physical limitations in her RFC analysis and finding - even those impairments that she did not find to be severe.  Tr. 18-22 (finding Womack capable of performing only light work with limitations on pushing, pulling, reaching overhead, stooping, crouching climbing, balancing, walking, being exposed to cold, and using his left arm).  As a result, there is no reversible error under step two.

**2.**     **The ALJ Properly Evaluated the Evidence of Record in Reaching her RFC Finding**

Womack next argues that the ALJ did not explicitly address "pertinent" medical evidence in reaching her RFC determination.  Doc. 14, pp. 10–13.  "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Simmons v. Barnhart,* 114 F. App'x. 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Walker v. Sec'y of Health & Human Servs*., 884 F.2d 241, 245 (6th Cir. 1989) (Commissioner need not address every piece of evidence in the record); *Boseley v. Comm'r of Soc. Sec*., 397 F. App'x. 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.") (citation omitted).   The fact that a specific piece of

13

evidence is not discussed does not indicate that it was not considered by the ALJ.  *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (quotations omitted).

Here, the ALJ undertook a thorough review of the record, addressing, *inter alia*, the observations and opinions of treating and consulting medical sources.  Tr. 20–22.  Despite Womack's claims to the contrary, the ALJ acknowledged his past surgeries ("The claimant alleged an inability to work due to surgeries on his back and arm which have cause numbness in his feet and toes and a decreased range of motion in his arm") and diagnostic test results ("X rays and MRI's of the left elbow, left forearm, lumbar spine, and cervical spine were relatively unremarkable").  Tr. 20.  The ALJ also relied on the opinion of Dr. Cho, whose assessment was based on a review of Womack's treatment history.  Tr. 21–22, 188-95.  *See Social Security Ruling 96-6p, 1996 WL 374180, at *2 (1996)* ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").  Thus, the failure of the ALJ to reference certain pieces of evidence, standing alone, does not constitute reversible error.

Moreover, Womack has failed to demonstrate that the evidence allegedly not considered by the ALJ actually undermined the ALJ's RFC determination.  Womack complains, for example, that the ALJ did not specifically address Dr. Leonard Calabrese's July 2005 examination or Womack's treatment at Harrison Community Hospital's pain clinic.  Doc. 14, pp. 11–12.  Womack argues that this evidence shows that he cannot perform the demands of even light work.  Doc. 14, p. 11.  Dr. Calabrese, however, did not offer an opinion as to any functional limitations caused by Womack's alleged symptoms.  Tr. 308–09.  Similarly, while records from

14

Womack's October 2008 treatment at the pain clinic reflect subjective complaints of pain, they do not indicate whether his symptoms caused functional limitations.  Tr. 261–62.  Further, subsequent treatment notes from the pain clinic established that he was "not really on any medicines;" that his back was "straight with normal curvature;" that "[s]traight leg raise is negative bilaterally;" that "[s]trength and sensation of the lower extremities is intact;" that "[m]uscle bulk and tone of the lower extremities is intact;" and that he "ambulates without much difficulty."  Tr. 365.  As such, although "pertinent" to his treatment history, these records do not include restrictions on Womack's functioning that implicate, let alone cast doubt upon, the ALJ's RFC finding.

Womack essentially accuses the ALJ of cherry picking the record in order to select evidence that portrays his condition in a positive light.  As noted by the Sixth Circuit, the so-called cherry picking of evidence by the ALJ "can be described more neutrally as weighing the evidence."  *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 284 (6th Cir. 2009).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citation omitted).  "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Id*. at 773 (citations omitted).  Here, the ALJ reviewed the entire record, weighed the evidence, and concluded that Womack retained the ability to do light work subject to certain limitations.  This RFC determination is supported by substantial evidence.

### 3.     The ALJ Properly Evaluated the Medical Source Opinions

Womack also argues that the ALJ did not properly weigh the medical source opinions in reaching her RFC determination.  Doc. 14, pp. 12-13.  Womack, however, fails to specifically

identify any medical source opinions that were allegedly ignored.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  In addition, Womack conflates medical diagnoses with medical opinions.  Simply because a statement emanates from a medical source does not necessarily render that statement a "medical opinion." See 20 C.F.R. § 416.927(a)(2) (defining "medical opinions"); *see also* Social Security Ruling 96-2p, 1996 WL 374188, at *1 (1996) (same).  Contrary to Womack's claim, the ALJ adequately evaluated the opinions of Womack's treating physicians.  Tr. 20–22.

Under the treating physician rule, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *Wilson*, 378 F.3d at 544.  In deciding the weight given, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion.  *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is not obliged to explain the weight afforded to each and every factor that might pertain to the medical source opinions.  *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x.

16

802, 804 (6th Cir. 2011).  Clear articulation of how the treating physician rule is applied allows a claimant to understand the rationale for the Commissioner's decision and it allows for meaningful review of the ALJ's application of the treating physician rule.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007).

In this case, the ALJ considered Dr. Looby's opinion and determined that it was entitled to little weight.  Tr. 17.  In reaching this decision, the ALJ addressed the apparent conflict between Dr. Looby's treatment records and his opinion that Womack could not work.  Tr.  20-21.  The ALJ noted that Womack followed up with Dr. Looby and explained that he was in trouble with the law for not making child support payments and was due to appear in court.  The ALJ also noted that Dr. Looby indicated that Womack was hoping that Dr. Looby would give him a note stating that he was unable to work, and that Dr. Looby simply "obliged [Womack] by submitting a note . . . stating that [he] was unable to engage in work-related activity.  Tr. 20–21.  The ALJ further noted that Dr. Looby stated that Womack had not made any attempts to secure any non-strenuous employment but instead chose to wait and see if he obtained public assistance.  Tr. 21.  The ALJ concluded that this evidence indicated that Dr. Looby was calling into question the veracity of Womack's motives and, as a result, she afforded the opinion of Dr. Looby little weight.  Tr. 21.  The ALJ's explanation demonstrates that she properly discounted Dr. Looby's opinion under the factors of supportability and consistency.  The ALJ therefore stated good reasons for discounting the opinion of Dr. Looby and properly evaluated this evidence under the treating physician rule.

The ALJ also considered the opinion of Dr. Allen and gave it little weight because it was inconsistent with the evidence as a whole, as well as his own treatment notes.  Tr. 21.  In his treatment notes, Dr. Allen found that Womack was in no acute distress, had good range of

motion, and that a family member reported that Womack was doing fine.  Tr. 21.  These notes are inconsistent with Dr. Allen's opinion that Womack was unable to lift more than ten pounds or do any repetitive tasks such as lifting, crawling, climbing, stretching, and stooping repeatedly.  Tr. 21.  The ALJ also found that Dr. Allen's opinions appeared to be based on Womack's subjective assertions of disabling pain rather than any objective medical evidence.  Tr. 21.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876–77 (6th Cir. 2007) (ALJ properly discounted physician opinion that was based primarily on claimant's subjective complaints).  The ALJ's explanation demonstrates that she properly discounted Dr. Allen's opinion under the factors of supportability and consistency.  Thus, the ALJ stated good reasons for assigning little weight to the opinion of Dr. Allen and complied with the treating physician rule.

Additionally, the ALJ evaluated the opinion of Dr. Pecar and assigned it little weight.  Tr. 21.  First, the ALJ was not obligated to give any weight to Dr. Pecar's opinion that Womack was "totally disabled." (Tr. 352).  A medical source's statement on an issue reserved for the Commissioner, such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and not a medical opinion.  20 C.F.R. § 416.927(e).  Such statements are not entitled to any special significance.  20 C.F.R. § 416.927(e)(3).  "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).  Second, the ALJ's explanation for assigning little weight to the opinion of Dr. Pecar satisfies the good reason requirement of the treating physician rule because she found that Dr. Pecar's opinion was inconsistent with his treatment notes, which show few objective abnormalities.  Tr. 21, 110, 345, 352.  The ALJ noted that progress notes from Dr. Pecar indicated that Womack missed several appointments.  Tr. 21.  The ALJ concluded that, if Womack's impairments were as disabling as he alleged, he would not fail

to show up for appointments.  Tr. 21.  Furthermore, the ALJ noted that Dr. Pecar found that Womack's prognosis was good.  Tr. 21.  This prognosis is inconsistent with Dr. Pecar's finding that Womack was totally disabled and that he had severe functional limitations.  The ALJ's discussion demonstrates that she properly discounted Dr. Pecar's opinion under the factors of supportability and consistency.  Thus, the ALJ stated good reasons for discounting the opinion of Dr. Pecar and complied with the treating physician rule.

Drs. Scheatzle and Cho both opined that Womack was capable of performing a range of medium work.  Tr. 183, 189.  The ALJ found that these opinions were the most reliable assessments of the functional limitations attributable to Womack's impairments.  Tr. 20–21, 183-189.  In addition, the ALJ resolved all doubts in favor of Womack by imposing even greater limitations on his functioning than found by either Dr. Scheatzle or Dr. Cho.  Indeed, the ALJ concluded that Womack had the RFC to perform light work subject to certain functional limitations.  Based on a review of the record as a whole, the ALJ's determination was reasonable and supported by substantial evidence.

In sum, the ALJ provided good reasons for assigning little weight to the opinions of Womack's treating physicians.  Accordingly, the ALJ complied with the treating physician rule and properly evaluated the medical source opinions.

**B.**	**The ALJ's Pain and Credibility Analysis is Supported by Substantial Evidence**

Womack asserts that the ALJ did not adequately consider his pain and credibility.  Doc. 14, pp. 13-16.  Specifically, Womack contends the ALJ failed to evaluate his pain and credibility in accordance with Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4.  This argument is without merit.

To evaluate the credibility of a claimant's subjective reports of pain, a two-part analysis is used.  20 C.F.R. § 416.929(a); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms.  *Rogers*, 486 F.3d at 247.  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work.  *Id.*  The ALJ should consider the following factors in evaluating a claimant's symptoms: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *Id.; see also* SSR 96-7p, 1996 SSR LEXIS 4.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers*, 486 F.3d at 247.  An ALJ's findings concerning the credibility of a claimant's testimony about his or her pain or other symptoms "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).  If the ALJ rejects a claimant's testimony as not being credible, the ALJ must state his reasons so as to make obvious to the individual and to any

subsequent reviewers the weight given to the individual's statements and the reason for that

weight.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); SSR 96-

7p, 1996 SSR LEXIS 4.

Here, the ALJ considered the requirements of SSR 96-7p and set forth the two-part

analysis required to evaluate the credibility of Womack's subjective reports of pain.  Tr. 19.  The

ALJ then evaluated Womack's claims of disabling pain pursuant to that analysis and found that

his allegations were not entirely credible.  Tr. 19-20, 22.  The ALJ first determined that

Womack's underlying impairments could reasonably be expected to produce the alleged

symptoms.  Tr.  20.  Next, the ALJ found that Womack's statements concerning the intensity,

persistence and limiting effects of these symptoms were not entirely credible.  Tr. 20.

Under the second step, the ALJ did not individually discuss each of the seven factors

listed above but her written decision demonstrates that she did consider the relevant evidence.

Tr. 20-22; *See Cross*, 373 F. Supp. at 732-33.  For example, the ALJ discussed a number of

Womack's daily activities that could be deemed inconsistent with his claimed inability to

perform any type of work.  Tr. 20.  These include the fact that he shops for groceries twice a

week, does some housework, and cares for his own hygiene.  Tr. 20.  The ALJ also considered

Womack's inconsistent efforts to obtain treatment for his allegedly debilitating symptoms, noting

that it was "reasonable to assume that if [Womack's] impairments were as disabling as alleged

he would not fail to show for appointments."  Tr. 21.  In addition, the ALJ observed that

Womack's physicians generally did not prescribe medication for his complaints and he often

took no more than aspirin to address his symptoms.  Tr. 20–21, 181, 365.  *See Blacha v. Sec'y of*

*Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[Claimant's] use of only mild

medications (aspirin) undercuts complaints of disabling pain.").  The ALJ also discussed Dr.

Looby's notes, which indicated that Womack had not attempted to secure any non-strenuous employment because he was waiting to see if he could obtain public assistance.  Tr. 21.  This evidence suggested that Womack's motivation to work was low.  Finally, the ALJ's credibility finding accorded with that of Dr. Cho, who, having determined that Womack's allegations were "not fully supported by objective findings," opined that his complaints were only "partially credible."  Tr. 193.

While the ALJ could have been more precise in tying her discussion of the evidence to her ultimate credibility conclusions, the decision was sufficiently clear to allow a reviewing court to determine the weight the ALJ gave to Womack's complaints of pain.  The ALJ's findings were therefore made in accordance with agency regulations and are supported by substantial evidence.

### VII.  Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Thomas Womack's application for SSI should be AFFIRMED.

Dated: November 30, 2011

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).